UNITED STATES of America,
Plaintiff,

v.

Dwight Dewitt ROBISON, Defendant.

Crim. No. 14432.

United States District Court
N. D. California, N. D.

April 29, 1968.

Rothwell B. Mason and William B. Shubb, Asst. U. S. Attys., Sacramento, Cal., for plaintiff.

Andrew J. Smolich, Sacramento, Cal., for defendant.

## MEMORANDUM AND ORDER

HALBERT, District Judge.

Surely Alice's journey into the White Rabbit's hole provided her with no experiences more amazing than those that I have had as the trial judge in this case.

Robison appeared before me on April 28, 1961, as the result of an indictment having been returned against him charging him in three counts with violations of Title 21 U.S.C. § 174, Sale of Heroin (See: Criminal No. 12,991 in the records of this Court when it was the Northern Division of the Northern District of California). An attorney was appointed to represent Robison (He has been represented by counsel at all stages of all the proceedings with which we are here concerned.), and on May 5, 1961, he entered a plea of not guilty to each of the charges set forth in the indictment. On June 19, 1961, he came into Court with his attorney and asked for permission to withdraw his plea of not guilty as to count one of the indictment so that he could enter a new and different plea. His request was granted and he entered a plea of guilty to count one of the indictment and asked that counts two and three of the indictment be dismissed. I took the matter of the dismissal of counts two and three under submission and requested the Probation Officer to provide me with a report so that I could ascertain what circumstances, if any, I should consider in mitigation of punishment insofar as count one was concerned. The report of the Probation Officer was received, and on July 7, 1961, I sentenced Robison to the custody of the Attorney General for a term of 15 years. At the same time I dismissed counts two and three of the indictment as requested by Robison.

On March 27, 1963, Robison filed a document entitled "Motion to Vacate and Set Aside Sentence—28 U.S.C. Section 2255." In this motion Robison attacked the indictment returned against him. This motion was denied on April 16,

1963. Robison thereafter filed a second "Motion to Vacate and Set Aside Sentence. Title 28 U.S.C. Section 2255" as he was entitled to do under the holding in Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148. After considering this second motion on its merits, I denied the motion on July 30, 1963. Robison perfected an appeal from my ruling, and the ruling was affirmed by the United States Court of Appeals for the Ninth Circuit on March 14, 1964 (See: Robison v. United States, 329 F. 2d 156). Certiorari was denied by the Supreme Court of the United States (See: Robison v. United States, 379 U. S. 859, 85 S.Ct. 115, 13 L.Ed.2d 61). All of the records relating to these proceedings will be found in Criminal No. 12,991, *supra*.

On June 1, 1965, Robison filed a third "Motion to Vacate and Set Aside Sentence. 28 U.S.C. Section 2255" (See: Civil No. 9356 in the records of this Court when it was the Northern Division of the Northern District of California) as he was entitled to do under Sanders v. United States, *supra*. Between his first two proceedings under Title 28 U.S.C. § 2255 and the filing of the third motion, the United States Court of Appeals for the Ninth Circuit had spoken in Munich v. United States, 337 F.2d 356, so Robison now sought to attack his sentence because Rule 11 of the Federal Rules of Criminal Procedure had not been complied with in the fashion required by the decision in the *Munich* case. At the same time Robison accused me of uttering "an outright lie" because I inadvertently at the time of

judgment said that it was the "time and place fixed for consideration of probation". Even though I personally had some misgivings concerning the broad brush sweep that was used in the *Munich* decision,[1] I nonetheless had Robison returned to my Court and proceedings were had in connection with his motion on July 2, 1965. The pertinent portion of the record of that date reads as follows:

"THE COURT: * * * I have gone through the file and given this matter some consideration, and I have decided that if Mr. Robison really wants this motion granted I will grant the motion.

I realize that I made an error at the time of judgment in referring to probation. Everybody sat there and let me do it, nobody said a word; but even so, I made the error, and if Mr. Robison feels that it is to his advantage to have this motion granted I am going to grant the motion on the basis of the record that is before me.

But before I grant this motion I want to make very certain that we don't have any more misunderstandings about the matter, and I want to say to you, Mr. Robison, I assume you are familiar with the Munich case, because you cited it.

THE DEFENDANT: Yes.

THE COURT: Well, I want to tell you what happened as far as Mr. Munich was concerned: I granted the motion as directed by the Court of Appeals and Mr. Munich was brought back here and tried and ended up by being convicted of four felonies, and he is now on ap-

---

1. The *Munich* decision was followed by an even more sweeping edict relative to Rule 11 of the Federal Rules of Criminal Procedure in Heiden v. United States, 9 Cir., 353 F.2d 53. With all due respect to the learned Judges of the United States Court of Appeals for the Ninth Circuit who signed the majority opinion, I think that Judge Chambers' dissent puts the problem in better and more practical focus than does the opinion of the majority. There is some consolation in the fact that Judge Chambers and I are not by ourselves in the view which we held. In this regard

see: Halliday v. United States, 1 Cir., 380 F.2d 270 at 272; Arnold v. United States, 3 Cir., 359 F.2d 425; Brokaw v. United States, 4 Cir., 368 F.2d 508 at 510; United States v. Kincaid, 4 Cir., 362 F. 2d 939 at 941; Weed v. United States, 5 Cir., 360 F.2d 568; Fleming v. United States, 5 Cir., 367 F.2d 555; and Stephens v. United States, 10 Cir., 376 F.2d 23 at 24.

Of course I am aware that Rule 11 was amended effective July 1, 1966, but *Munich* and *Heiden* were both decided before the rule was amended.

peal not from the sentence but from the conviction of four felonies.

I don't know what the course of events will be in this case here, but Mr. Munich did all the time that he had done up to that time on a dead time basis.

This is entirely possible what will happen in your case.

I am not the United States Attorney, not the prosecutor, and I have no concern with it at all except to see that justice is done.

I am telling you this so that later on you won't come back again and say nobody told you what was going to happen in this matter.

Now, I am going to give you and Mr. Smolich an opportunity to discuss the matter, and if you sincerely want this motion granted I will grant it, and then the United States Attorney may take such steps as he desires.

Now, Mr. Shubb, is there any objection on the part of the Government to this proceeding if Mr. Robison will agree?

MR. SHUBB: No objection.

THE COURT: Now, this is something of a dilemma, I must confess; but I want Mr. Robison to make the decision in the matter and I want him to make it after he has had an opportunity to discuss it with you, Mr. Smolich, realizing —as I remember, there were three counts in this particular case here.

MR. SMOLICH: Yes, your Honor.

THE COURT: Now, those two that have been dismissed can be reinstated; they were ordered reinstated in the Munich case and that is exactly what happened; it went to trial, and, as I remember, the jury—I think he was charged with five or six counts and they convicted him of four out of the five or six counts, which indicated that the jury was very careful and thought the thing through and just didn't come in, boom, and say everybody is guilty or everybody is innocent.

Do I make my position clear in this matter?

MR. SMOLICH: Yes, your Honor.

THE COURT: And you understand that the decision has to be with Mr. Robison as to whether or not he wishes to face the prospects of future prosecution with the time served up to the present time possibly dead time, or does he want to stand on the record as it is now.

We have had one hearing that has gone to the Court of Appeals and that was affirmed. This matter that is now before me was not previously raised, and I think it could be, and I am willing to concede, that I made a mistake. I am not at all sure that everybody didn't realize what was going on, because nobody said anything, but nevertheless I did it and it is my responsibility and I assume the responsibility.

Now, do you want an opportunity to consider the matter?

MR. SMOLICH: May I talk with my client for just a second, your Honor?

THE COURT: Yes, certainly. Well, more than a second if you wish.

MR. SMOLICH: This is to determine one factor before I make a statement.

THE COURT: Very good, very good.

(Mr. Smolich confers with the defendant.)

MR. SMOLICH: Your Honor, may we have one week in order that I may familiarize myself with the original charges and so I can consult with Mr. Robison?

THE COURT: Well, there is only one thing, Mr. Smolich, and that is what the clerk was calling my attention to: I have another hearing set for next Friday. This week I have been pretty much free, as you know, because one of the defendants in this extended case here we have had became ill Tuesday and I had to adjourn that case, and then a week from tomorrow we will be leaving for the annual conference. It is nothing that I am particularly anxious to go to, but I am required by law to go there, and we will be gone for about two weeks.

Now, I am willing to grant you any reasonable request that you want to make.

MR. SMOLICH: My client is willing to wait the additional two weeks, your Honor.

THE COURT: Well, suppose we do this: suppose we put this matter over for a week until one P.M.—we won't be able to have any hearing or anything, you will simply be able to inform me of your decision at that time, then we will select a date at the very earliest—if you want to proceed in some fashion we can select a date at the very earliest possible.

MR. SMOLICH: Your Honor, could it possibly be Thursday because I will be out of town Friday.

THE COURT: All right, yes, Thursday, if this is agreeable to you and Mr. Robison.

MR. SMOLICH: It is agreeable, your Honor.

THE COURT: All right. Then we will make it Thursday at one P.M.

MR. SMOLICH: That will be fine, you Honor.

THE COURT: All right. We will continue this matter over until then. It is to be understood that you are not going to have to make any further showing in this matter here; if you really want the matter granted I will grant it; but if you want to reconsider the matter this has to be a considered choice in the light of all the information available, and if you have any questions that you want to ask, or if Mr. Robison has any questions that he wants to ask, those questions should be asked now, not so we will be faced with further proceedings later on.

MR. SMOLICH: All right, your Honor. It is my understanding the decision will be up to Mr. Robison.

THE COURT: That is right, and I want it understood that he is at liberty to ask questions or to say or do anything that he wants, and I would prefer that he does it through you, so that there won't be any question about myself or the United States Attorney in any way influencing him; but I want it abundantly clear that I am ready to answer any questions that may be asked and I am sure the United States Attorney will be too. If they don't, why, you can come to me and I will see what I can do to help you with that.

All right, it will be continued over until July 8th at one P.M.

That is all, I take it, at this time.

MR. SMOLICH: Yes, your Honor."

On July 8th the following took place:

"THE CLERK: Civil No. 9356, Robison vs. U. S.

THE COURT: Gentlemen?

MR. SMOLICH: Yes, your Honor. Your Honor, I have discussed this matter fully with Mr. Robison, and he is cognizant of the fact that he will be involved in three counts at this time, the total potential sentence is 60 years at the maximum, but he still feels that his case has merit and desires that the sentence be set aside and he be allowed to go to trial.

THE COURT: Very well.

MR. MASON: Just to correct one thing, your Honor: I would anticipate that I will seek a superseding indictment, and I can't guarantee at this point that it will be on exactly the same three counts. As to exactly what counts will be involved I don't know at this point. It may be—

THE COURT: All you are saying is that you don't want it to be understood that you are not going to trial on additional charges or supplemental charges.

MR. MASON: That is correct; so that the record wouldn't show some quote deal unquote that there would be a three-count indictment to go to trial on. I would anticipate, in light of recent court decisions, for example, that I will seek a re-indictment involving 26 USC 4705 as well as the Jones-Miller Act.

THE COURT: Does this make any difference as far as you and the defendant are concerned, Mr. Smolich?

MR. SMOLICH: No, your Honor.

THE COURT: All right. The motion is granted, then, and I am prepared to set the case for trial, and I am going to give it priority because of the fact that Mr. Robison has been—"

And so Robison made a deliberate decision to accept the risk of a trial on additional counts rather than let his plea to count one stand.

The United States Attorney elected to "tidy up [the] original indictment by dismissing the old one and reindicting" Robison as was authorized in Munich v. United States, 9 Cir., 363 F.2d 859, cert. denied 386 U.S. 974, 87 S.Ct. 1167, 18 L.Ed.2d 135. Robison came before the Court on August 17, 1965, with his attorney faced with a new indictment which contained six counts. Counts one, three and five charged Robison with violating Title 21 U.S.C. § 174, Sale of Heroin, and Counts two, four and six charged Robison with violating Title 26 U.S.C. § 4705(a), Sale of Heroin Not Pursuant to Written Order. Robison entered a plea of not guilty to each count, and the case went to trial before a jury beginning on January 3, 1966. On January 6, 1966, the jury returned a verdict of guilty on each of the six counts. On January 12, 1966, I sentenced Robison to the custody of the Attorney General for a term of ten years on counts one and two, and a term of fifteen years on courts three, four, five and six with all terms to run concurrently.

Robison appealed from the judgments entered against him and these judgments were affirmed by the United States Court of Appeals for the Ninth Circuit on May 18, 1967 (See: Robison v. United States, 379 F.2d 338). Robison sought certiorari from the Supreme Court of the United States and when the case arrived there the Solicitor General filed a memorandum which, among other things, contains the following statements:

" * * * Under these conditions the district court gave petitioner and his counsel a one-week postponement to consider the possibility that the defendant might be confronted with serving 'dead' time, which had been the situation confronting *Munich*. The district judge pointed out that he would have to grant the motion to vacate the plea if the petitioner so desired, but indicated to the petitioner and his counsel that he wished to make certain that there would be no more misunderstanding as to the consequences. In that regard he noted that Munich had been retried and had been sentenced not only on the count upon which he previously pleaded guilty, but also on other felony charges. He explained the possibilities to the defendant and his counsel so that they would not 'come back again and say nobody told you what was going to happen in this matter' * * *. Both counsel and petitioner stated that they understood.

Petitioner was reindicted in August 1965 for the three sales originally charged. In addition, the indictment included three other counts based on the same three sales, charging offenses under 26 U.S.C. 4705(a) * * *. Petitioner was convicted on all six counts * * *.

"4. Although we believe that petitioner's contentions, discussed above, are not meritorious, and thus this case does not warrant plenary consideration, we think it necessary to deal with the further question whether petitioner was in any way adversely affected by the addition of the three counts under 26 U.S.C. 4705(a) covering the same sales as were previously charged as violations of 21 U.S.C. 174.

Petitioner was forewarned by the judge and by the *Munich* decision upon which he had relied that if his plea of guilty were set aside he faced trial not only on the count to which he had previously pleaded guilty, but also might be tried on the charges based on separate sales which the government had dismissed at the time the original plea had been entered. The increase in his total time of imprisonment resulted not from the count upon

which he had originally pleaded guilty, but from the fact that he was convicted of two other separate sales.

The judge did not explicitly warn petitioner that wholly new counts might be added.[2] Subsequent to this reindictment, the Department of Justice formally announced a policy,[3] in the 'United States Attorneys Bulletin', that the addition of counts upon a retrial is 'unwarranted except in those situations where it is intended that the defendant be permitted to plead to an offense with a lower minimum penalty or that the judge be afforded an opportunity to take account of the time already spent in prison.'[4]

\* \* \*

While it may be argued, as the court below ruled, that no prejudice resulted from the addition of the counts under 26 U.S.C. 4705(a) since the sentences imposed upon those counts are to run concurrently with the sentences under Section 174, it is possible that the conviction on the extra counts may have influenced the sentence in this case. We accordingly suggest that it would be 'just under the circumstances', 28 U.S.C. 2106, for this Court to vacate the convictions

under 26 U.S.C. 4705(a) and to remand the case to the district court for reconsideration of the sentences imposed in connection with the two reinstated counts under 21 U.S.C. 174. \* \* \* "

All the Solicitor General has done is to confess error based on a Department of Justice "formally announced \* \* \* policy" put into effect after this case was tried.[5] Faced with this confession of error it is little wonder that the Supreme Court on March 4, 1968, entered an order which reads as follows:

"PER CURIAM.

The motion for leave to proceed *in forma pauperis* and the petition for a writ of certiorari are granted. In light of the representations of the Solicitor General and our own independent consideration of the entire record, the judgment is vacated and the case is remanded to the District Court for further consideration." 88 S.Ct. 903.

and followed it with a mandate to me which reads as follows:

"ON WRIT

OF CERTIORARI to the United States Court of Appeals for the Ninth Circuit.

2. The Solicitor General has, of course, incorrectly stated what occurred in my Court. I am sure that this was not deliberate, but rather as the result of his failure to take the trouble to ascertain the true facts. The record quoted above gives the true facts and shows conclusively that Robison was carefully warned concerning the consequences that might follow in the event he elected to have his motion granted.

3. This policy was promulgated on July 21, 1967. Since Robison was tried in January, 1966, this was, insofar as this case is concerned, an *ex post facto* edict. It is difficult enough for a trial judge to try a case following the existing law, without having to anticipate what the policy of the prosecution will be more than a year after the trial was completed.

4. Of course, I did take into account the fact that Robison had spent five years in prison when I sentenced him to a term of 10 years on counts 1 and 2 concurrently. I feel constrained to add that there

are some judges and legal scholars who feel that, notwithstanding the fact that it has been approved in the past, there well may come a day when the legal presumption created by the second paragraph of Title 21 U.S.C. § 174 (Cf. Chavez v. United States [9 Cir.], 343 F.2d 85) may be disapproved. It has been made clear to me that it was a hedge against this possibility, rather than a desire to punish Robison for his appeal, which caused the United States Attorney to add charges under Title 26 U.S.C. § 4705(a). My sentence was pronounced with this view in mind.

5. It would seem to me that the Solicitor General would do well to read with care what Judge Pope has said in his dissent in Orlando v. United States, 9 Cir., 387 F.2d 348 at 349 where he quoted from the opinion handed down by Judges Chambers, Hamlin and Koelsch in Cornet v. United States (No. 20,386 in the records of the United States Court of Appeals for the Ninth Circuit on November 16, 1966).

THIS CAUSE came on to be heard on the transcript of the record from the United States Court of Appeals for the Ninth Circuit.

ON CONSIDERATION WHEREOF, it is ordered and adjudged by this Court that the judgment of the said United States Court of Appeals in this cause be, and the same is hereby, vacated;—and that this cause be, and the same is hereby, remanded to the United States District Court for the Northern District of California for further consideration in conformity with the opinion of this Court."

The case is now back before me, and the defendant has made a motion to dismiss it. In view of the fact that I feel that the Government has already spent all of the time, effort and money that it should be called upon to spend in this case; that Robison is now in state custody for violating narcotics laws while on bail during his appeal in this case; and that I do not believe that the Government can ever present a stronger case against Robison than it has previously presented, I am convinced that Robison's motion to dismiss the action should be granted (See: Gonzales v. United States, 9 Cir., 374 F.2d 112; and Jeffers v. United States, 392 F.2d 749 [U. S. Court of Appeals for the Ninth Circuit, decided March 27, 1968]). In reaching this conclusion I am much influenced by the fact that the Supreme Court did not follow the suggestion of the Solicitor General that they "affirm the convictions on counts one, three and five, but vacate the conviction on counts two, four and six, and remand the cause to the district court for reconsideration of the sentences on counts three and five" but rather "in light of the representations of the Solicitor General and [its] *own independent consideration of the entire record*" (emphasis added) the Supreme Court vacated the judgment in its entirety.

It is, therefore, ordered that defendant's motion to dismiss this action be, and the same is, hereby granted;

And it is further ordered that this action be, and the same is, hereby dismissed.