UNITED STATES of America, Appellee,

v.

Gregory K. EISLER, Appellant.

UNITED STATES of America, Appellee,

v.

Robert Alan HOFF, Appellant.

Nos. 77–1042 and 77–1246.

United States Court of Appeals,
Eighth Circuit.

Submitted June 14, 1977.

Decided Dec. 19, 1977.

Rehearing Denied Jan. 9, 1978.

Neal J. Shapiro, Minneapolis, Minn., argued and on brief, for appellant Eisler.

John Whylde, St. Paul, Minn., argued for appellant Hoff; Joseph S. Friedberg, Minneapolis, Minn., on brief.

John M. Lee, Asst. U. S. Atty. (argued), and Robert G. Renner (former U. S. Atty.), Minneapolis, Minn., on brief, for appellee.

Before LAY and ROSS, Circuit Judges, and MILLER, Judge.*

MILLER, Judge.

Eisler and Hoff appeal their conviction after a joint trial by jury on a two-count indictment charging each with distribution of heroin, a Schedule I controlled narcotic substance, on August 18, 1976, in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2, and with conspiracy to distribute heroin on the same date in violation of 21 U.S.C. § 846. We affirm.

Appellants advance several grounds for reversal. They assert that the testimony of Ronald Tomcik, a special agent with the Drug Enforcement Administration ("DEA"), should have been stricken or a mistrial granted when the Government could not produce his original surveillance notes because another agent had destroyed them. Eisler also argues that the Government violated Fed.R.Crim.P. 16 by failing to produce statements made by him to other Government agents and recorded in their notes and reports. Appellants further assert that the district court committed reversible error in allowing the testimony of DEA Agent Kramer about conversations he overheard between them while he was inside Hoff's apartment building, because he had no warrant or permission from the landlord to be in the building and, therefore, had violated appellants' constitutional right to be free from unreasonable searches. Finally, Hoff argues that error was committed when DEA Agent Kryger was permitted to testify concerning the results of a field test he conducted on traces of a brown powder found in Hoff's apartment, considering that the trial court had excluded the expert testimony of a chemist (on the results of tests he had performed) because of failure of the Government (in violation of Fed.R.Crim.P. 16) to disclose, prior to trial, the existence of the chemist's report; also, that a mistrial should have been declared for such failure of the Government.

### Background

On the morning of August 18, 1976, Agent Kryger and an unnamed informant met Eisler and drove to a nearby restaurant where an agreement was entered into for Kryger to purchase heroin. Thereupon, Eisler made a phone call to his source of drugs. Tomcik, who was also in the restaurant, overheard the phone conversation. Kryger, the informant, and Eisler then left the restaurant and drove to an apartment complex at 5720 East River Road in Fridley, Minnesota. Kryger paid Eisler $920 and

---

* The Honorable Jack R. Miller, United States Court of Customs and Patent Appeals, sitting by designation.

remained in his car while Eisler entered the building.

Kramer, who earlier that morning had gained entry to the apartment complex by going in right behind a tenant who had opened a door,[1] watched from a common hallway and saw Eisler enter and leave Hoff's apartment. He also overheard conversations between Eisler and Hoff in the hallway and from within Hoff's apartment. After leaving Hoff, Eisler rejoined Kryger, gave him a ten-dollar roll of quarters as change, and was driven home. Before leaving the car, he gave Kryger a clear plastic bag containing 8.5 grams of brown heroin.

Later that day Kryger returned to Hoff's apartment and conducted a search pursuant to a warrant. This resulted in the recovery of $820 of the $920 that Kryger had paid Eisler, five rolls of quarters, a box of clear plastic bags, balloons, and a triple beam balance set at 8.5 grams. Kryger also recovered traces of a brown powder on the rim of the bathroom toilet seat which, when field tested, gave a positive indication of the presence of opium alkaloid. Further tests on the powder conducted by a chemist were inconclusive due to the small amount recovered; such tests completely consumed the remainder of the powder.

## OPINION

*Agent Kramer's Presence in the Hallway of Hoff's Apartment Building*

■ With respect to appellants' assertion that Kramer's testimony concerning his observations and the overheard conversations should have been stricken, we are not persuaded that the dispositive question is whether Kramer's entry was a technical trespass. *United States v. Cruz Pagan*, 537

F.2d 554, 558 (1st Cir. 1976). Rather, the essential inquiry is whether appellants had a reasonable expectation of privacy in the hallway of the apartment building. *See Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *United States v. Anderson*, 175 U.S.App.D.C. 75, 533 F.2d 1210 (1976). We hold that they did not.[2] The locks on the doors to the entrances of the apartment complex were to provide security to the occupants, not privacy in common hallways. *See United States v. St. Clair*, 240 F.Supp. 338 (S.D.N.Y.1965). Appellants rely on the holding in *United States v. Carriger*, 541 F.2d 545 (6th Cir. 1976), but we do not agree with the court's analysis in that case.[3] An expectation of privacy necessarily implies an expectation that one will be free of *any* intrusion, not merely unwarranted intrusions. The common hallways of Hoff's apartment building were available for the use of residents and their guests, the landlord and his agents, and others having legitimate reasons to be on the premises. That Kramer was a technical trespasser in a *common* hallway is of no consequence since appellants had no reasonable expectation that conversations taking place there would be free from intrusion. Thus, there is a critical difference between the facts of this case and those in *United States v. Fluker*, 543 F.2d 709 (9th Cir. 1976), where the defendant's apartment was *isolated* from other areas of the building and the court concluded that a reasonable expectation of privacy extended to the hallway immediate to such apartment.

*Tests of Traces of Brown Powder Found in Hoff's Apartment*

■ Regarding Hoff's argument that the trial court should have granted a mistrial

1. Entry to the building otherwise was by key or by a tenant inside an apartment "buzzing" to release the lock.

2. However, such an expectation of privacy would ordinarily cover conversations that took place *inside* Hoff's apartment. *See McDonald v. United States*, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948); *but see United States v. Wilkes*, 451 F.2d 938 (2d Cir. 1971). Kramer testified that he overheard Hoff respond to Eisler's "buzz" at the entrance door by asking "Who is it" and that Eisler answered "Ard-

vark." Admission of that testimony was error, but it was harmless. Appellants' objection appears to be aimed principally at Kramer's presence in the hallway and the conversations in the hallway that he overheard.

3. It should be noted that the *Carriger* panel departed from several earlier cases in various circuits holding that a law enforcement officer's presence in the common areas of buildings does not violate a tenant's constitutional rights. *Id.* at 549.

because of the Government's failure to supply the defendants with a copy of the chemist's report prior to trial pursuant to Fed.R. Crim.P. 16,[4] Hoff acknowledges that sanctions for Rule 16 violations are within the discretion of the trial court. *Hansen v. United States*, 393 F.2d 763 (8th Cir. 1968). Since he was not prejudiced by the chemist's report, which was not admitted into evidence or used at trial, there clearly was no abuse of discretion in failing to declare a mistrial.

■ As to admissibility of the testimony of Kryger on the results of the field test

he conducted, Hoff declares that it would be anomalous to admit Kryger's nonexpert testimony while excluding the chemist's expert testimony. However, he was charged and convicted of distribution of heroin, not possession. The brown powder found by Kryger on the toilet seat in Hoff's apartment was not necessary to the Government's case; and the heroin distributed by Hoff to Eisler and then sold to Kryger was preserved by the Government and used at trial. Also, Kryger, as an experienced agent familiar with the field test, was competent to testify concerning the results of the test he conducted. *United States v. Hampton*, 507 F.2d 832 (8th Cir. 1974), *aff'd*

---

4. Rule 16 provides in pertinent part:
   *Rule 16. Discovery and Inspection.*
   (a) Disclosure of Evidence by the Government.
   (1) *Information Subject to Disclosure.*
   (A) Statement of Defendant. Upon request of a defendant the government shall permit the defendant to inspect and copy or photograph: any relevant written or recorded statements made by the defendant, or copies thereof, within the possession, custody or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government; the substance of any oral statement which the government intends to offer in evidence at the trial made by the defendant whether before or after arrest in response to interrogation by any person then known to the defendant to be a government agent; and recorded testimony of the defendant before a grand jury which relates to the offense charged. Where the defendant is a corporation, partnership, association or labor union, the court may grant the defendant, upon its motion, discovery of relevant recorded testimony of any witness before a grand jury who (1) was, at the time of his testimony, so situated as an officer or employee as to have been able legally to bind the defendant in respect to conduct constituting the offense, or (2) was, at the time of the offense, personally involved in the alleged conduct constituting the offense and so situated as an officer or employee as to have been able legally to bind the defendant in respect to that alleged conduct in which he was involved.

   (D) Reports of Examinations and Tests. Upon request of a defendant the government shall permit the defendant to inspect and copy or photograph any results or reports of physical or mental examinations, and of scientific tests or experiments, or copies thereof, which are within the possession, custody, or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government, and which are material to the preparation of the defense or are intended for use by the government as evidence in chief at the trial.

   (d) Regulation of Discovery.
   (1) *Protective and Modifying Orders.* Upon a sufficient showing the court may at any time order that the discovery or inspection be denied, restricted, or deferred, or make such other order as is appropriate. Upon motion by a party, the court may permit the party to make such showing, in whole or in part, in the form of a written statement to be inspected by the judge alone. If the court enters an order granting relief following such an *ex parte* showing, the entire text of the party's statement shall be sealed and preserved in the records of the court to be made available to the appellate court in the event of an appeal.
   (2) *Failure to Comply with a Request.* If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances. The court may specify the time, place and manner of making the discovery and inspection and may prescribe such terms and conditions as are just.

*on other grounds*, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976). Finally, Hoff has not shown any bad faith destruction of evidence by the Government; nor any prejudice to him from the destruction of any evidence. *See United States v. Henry*, 487 F.2d 912 (9th Cir. 1973); *United States v. Sewar*, 468 F.2d 236 (9th Cir. 1972), *cert. denied*, 410 U.S. 916, 93 S.Ct. 972, 35 L.Ed.2d 278 (1973); *Munich v. United States*, 363 F.2d 859 (9th Cir. 1966). Although he argues that he could have made independent tests on the brown powder had it not been totally consumed, there is no evidence that a request to independently test the powder was made prior to trial.

### Statements by Eisler to Government Agents

 Regarding Eisler's argument that the Government violated Fed.R.Crim.P. 16 [5] by failing to produce statements he made to Kryger and Kramer and recorded in their notes and reports, it appears that Eisler received a copy of a surveillance report at trial which he admits "for the most part" contains the conversations Kryger had with him; also, that Kramer's rough notes were made available to Eisler since a copy of them is appended to Eisler's brief. Under these circumstances, even if such conversations were discoverable under Rule 16(a),[6] no prejudice resulted. *United States v. Fallen*, 498 F.2d 172 (8th Cir. 1974); *United States v. Finnigan*, 504 F.2d 1355 (8th Cir. 1974).

We affirm the conviction of both defendants on the distribution counts. Since the sentences on the conspiracy counts were concurrent with those on the distribution counts, we do not, in the interests of judicial economy, pass on the propriety of the conviction on the conspiracy counts.[7] *United States v. Williams*, 548 F.2d 228 (8th Cir. 1977); *United States v. Darnell*, 545 F.2d 595 (8th Cir. 1976), *cert.*

---

5. See note 4 *supra*.

6. We express no opinion on this question.

*denied*, 429 U.S. 1104, 97 S.Ct. 1134, 51 L.Ed.2d 556 (1977).

*AFFIRMED.*

---

7. Thus, we do not reach the issue of the Government's failure to produce Tomcik's original surveillance notes. His objected-to testimony on the overheard conversation had to do only with the conspiracy counts.